UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS CARTER, | : | |
| | : | |
| Plaintiff | : | No. 1:14-CV-00626 |
| | : | |
| vs. | : | (Judge Kane) |
| | : | |
| MR. KUHN, et al., | : | |
| | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

I. **Background**

On April 2, 2014, Cornelius Carter filed a complaint under 42 U.S.C. § 1983 against the following individuals employed at the York County Prison: (1) Mr. Kuhn, Corrections Officer; (2) Mr. Rudd, Captain; (3) Clair Doll, Deputy Warden; (4) Mr. Bruno, Deputy Warden/Facility Manager; and (5) Mr. McNicholas, Classification Officer. (Doc. 1) The defendants waived service of the complaint on or about August 21, 2014, and on September 8, 2014, filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) along with a brief in support thereof. Carter did not file an opposition brief within 14 days of service of the defendants' supporting brief as required by Local Rule 7.6 and on October 7, 2014, the court issued an order directing Carter to file a brief in opposition by October 27, 2014, and further advised him that failure to do so would result in defendants' motion being deemed unopposed. (Doc. 29)  On January 16, 2015,

Carter filed an untimely brief in opposition. Defendants' motion to dismiss, therefore, is ripe for disposition and for the reasons set forth below will be granted.

II. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal,___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is

not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In addition, because Carter complains about "prison conditions," the screening provisions, 42 U.S.C. § 1997e(a) and 28 U.S.C. § 1915(e), of the Prison Litigation Reform Act ("PLRA") apply,[1] given that Carter was granted *in forma pauperis* status to

---

1. Section 1997e(a) states as follows:

   No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C.A. § 1997e(a).

   Section 1915(e)(2), which was created by § 804(a)(5) of the Act, provides:

   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at anytime if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be
   (continued...)

pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed. Appx. 183 (3d Cir.2008).

### III. Allegations in Complaint and Exhaustion of Admininstrative Remedies

In the complaint Carter alleges that he arrived at the York County Prison on September 28, 2012, and upon his arrival was subjected to various conditions of confinement amounting to cruel and unusual punishment which violated his rights under the United States Constitution. (Doc. 1) He appears to claim that he did not have access to a toilet for a period of time and also was placed in administrative segregation ("the hole") for ten days. Id. More specifically, Carter alleges that when he arrived at the prison at 4:30 a.m. he was escorted from the admission area of the prison to the pre-classification area and then was allegedly taken

---

1. (...continued)
   granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

4

by Corrections Officer Kuhn to a cell, in which there were two inmates, to use the toilet. Id. At least one of the inmates in the cell became hostile and appears to have objected to Carter using the toilet but there is no indication that the inmate persisted in his hostility or objection at that time. Id. Carter then indicates that at about 12:00 noon, he was denied the right to defecate in any available cell by the inmates housed in those cells and complained to Corrections Officer Kuhn. Id. Corrections Officer Kuhn then took Carter to an administrative segregation cell to use the toilet where Carter remained until October 8, 2012. There are no allegations in the complaint regarding how defendants Rudd, Doll, Buono and McNicholas were involved in the actions taken by Corrections Officer Kuhn other than with respect to possibly addressing the administrative grievance subsequently filed by Carter.[2]

It is not clear from the complaint whether or not Carter was a pretrial detainee or an inmate subject to a judgment of conviction and sentence.[3] Id. However, Carter couches his

---

2. Carter filed of record a document entitled "Request to Produce Tangible Documents" attached to which were several documents. (Doc. 39) Those attachments included the prison officials responses to a grievance filed by Carter. In one of those responses it was stated that Captain Rudd was called to the block where Carter was located and a disciplinary report generated. (Doc. 39, at 2)

3. In a subsequent document filed by Carter on October 10, 2014, he refers to being released on bail from York County Prison on December 4, 2014, after 68 days. (Doc. 32, at 5)

complaint in the language of a claim brought pursuant to the Cruel and Unusual Punishments clause of the Eighth Amendment. <u>Id.</u> He claims the prison conditions and the treatment he received from the defendants amounted to cruel and unusual punishment and that the defendants were deliberately indifferent to his "basic human needs." <u>Id.</u>

The PLRA prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials, including being subjected to unlawful conditions of confinement, until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). A prisoner must exhaust administrative remedies or risk procedural default. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir.2004). In this case Carter submitted a grievance which stated in toto, including grammatical and spelling errors, as follow:

> Upon arriving here at York County Prison I was housed on SE-pre-classification Blk. On the dayroom floor. The C.O. Kuhn & the SE-blk officer informed me to use cell #4 if I had to utilize the bathroom. There was 2 inmates already housed in that cell as was so with the other 6 cells on this particular blk. After lunch time I had to deficate (stool). The inmate denied me this privilege as did the other occupants of each of the other cells when I proceeded to try and ask to use the bathroom. I brought this to officer(s) Kuhn and there answer to this problem was escorting me the (BAU)[4] the hole, where I remained from September 28, 2012-October 8, 2012. I wasn't even issued a misconduct for any wrongdoing. My grievance is I was housed in the Dayroom with know where to utilize a bathroom which is inhuman

---

4. Other documents reveal that the BAU is an abbreviation for Behavioral Adjustment Unit.

6

and problematic. It caused confrontation with other
inmates and caused me to be put in the hole. It also
caused me to lose phone privileges that were needed to
handle my business outside the prison. I'm asking for
relief $50.00 day for compensatory, punitive & emotional
distress. Capt. Neeper, Lt. Igizzari, Capt. Rudd; C.O.
Kuhn spoke will all of these staff. Thank you.

(Doc. 39, Carter's Request to Produce Tangible Documents, Exhibit C) The initial response by a prison official, the grievance coordinator, denying Carter's grievance was as follows:

> I received your complaints in which you request monetary
> compensation for "compensatory, punitive & emotional
> distress." You indicate in your complaint that you
> were unable to use a restroom because you were housed on
> a cot in the "dayroom" of South Block. You claim
> occupants of the cells within South Block would not
> permit you to use their toilets and when you brought it
> to the block officer's attention, you were "placed in
> the hole", though you did not receive a write up.
> Inmates are placed on cots when bed space is limited.
> Once bed space becomes available, inmates are
> moved from cots and classified accordingly. Upon
> investigation, it was learned that you were written
> up on the day in question and charged with refusing/
> classification. You were therefore housed on a cot in
> South Block for less than eight (8) hours before you
> were escorted to the BAU housing area (IEB-13B) However,
> an error occurred when processing your disciplinary
> paperwork, thus your disciplinary record remains clear.
> When the error was brought to the shift supervisor's
> attention, you were released from the BAU. I have
> submitted a mental health referral on your behalf due
> to your allegation of "emotional distress", however,
> your request for monetary compensation is denied.

Id. On December 4, 2012, Carter was released from York County Prison but requested that the appeal of his grievance continue and the Deputy Warden of York County Prison responded to that appeal on February 8, 2013, as follows:

> You were released from our custody on 12/4/12 prior to
> exhausting your administrative remedies . . . After

7

> your release, you contacted our Grievance Office and
> requested to continue your appeals.  As a result, I
> pulled your complaint and conducted further
> investigation into your allegations.
>
> You named Officer Kuhn as a witness to the events
> on 9/28/12.  As a result, I requested his statement
> regarding the incident.  He explained that your were
> "flipping out" and were demanding to [be] removed from
> the  pad. (sic) You also stated that you did not care
> where you [were] placed, including the Behavioral
> Adjustment Unit (Echo Block). Captain Rudd was called
> to the block, a disciplinary report was generated
> and you were placed in Echo Block pending a hearing.
> Once in Echo Block, you told staff that you were
> suicidal. You were then placed on suicide precautions
> in Cross Halls.
>
> South Block is our pre-classification unit, which
> is required by various standards.  Each pod has a
> specific classification of inmate.  All inmates must be
> medically screened and classified prior to being moved
> to general population. Subsequently, cots are used from
> time to time as temporary housing when there is an
> influx of incoming inmates in a specific classification.
> Rarely do inmates spend more than 24 to 48 hours on a
> cot before moving to a cell. Additionally, the use of
> toilets by inmates on cots has not historically been an
> issue. When it has the officers, will address it. In
> your case, it appears that your approach of "flipping
> out"(as described by the officer) was not the
> appropriate manner to bring you concerns to the
> officers attention.  Additionally, such behavior can
> disrupt the pod.
>
> There was a processing error with your misconduct
> report. As a result, you were removed from Echo Block
> and no disciplinary report is formally part of your
> inmate file.
>
> In closing, I am denying your appeal.

Id.  After the decision by the Deputy Warden, Carter fully

exhausted his administrative remedies with respect to his

grievance by appealing to the Solicitor for the York County Prison

Board and then the York County Prison Board. Id.

8

Although Carter makes some allegations about the overall condition of the York County Prison such as inadequate medical care, plumbing, and overcrowding, the claims raised in the complaint are limited to the ten day period from September 28, 2012 to October 8, 2012, when Carter was released from administrative segregation because the grievance filed with prison officials by Carter is limited to that time frame and there is no mention in that grievance of these other conditions of confinement.

**IV. Discussion**

The defendants argue that Carter's complaint fails to allege any personal involvement of any defendant in a constitutional violation of Carter's rights.

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must assess whether Carter has sufficiently alleged personal involvement of the defendants in the act which he claims violated his rights. Liability may not be

imposed under § 1983 on the traditional standards of <u>respondeat superior</u>. <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 (3d Cir. 1989) (citing <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1017, 1082 (3d Cir. 1976)). In <u>Capone</u>, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7.

**A. Defendants Doll, Buono and McNicholas**

With respect to defendants Doll, Buono and McNicholas, the court discerns no allegations in the complaint that they were involved in the decision to move Carter to the administrative segregation unit to use the toilet. Moreover, to the extent that any of them were involved in the handling of Carter's grievance such involvement is insufficient as a matter of law to render those defendants liable. "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." <u>Rauso v. Vaughn</u>, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). <u>See</u> <u>also</u> <u>Overholt v. Unibase Data Entry, Inc.</u>, 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); <u>Mitchell v.</u>

Keane, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Beard, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- Fed.Appx. ----, 2009 WL 1111545 (3d Cir. April 27, 2009); Caldwell v. Hall, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Consequently, Carter has not stated a viable claim against defendants Doll, Buono or McNicholas and the complaint as it relates to them will be dismissed.

### B. Captain Rudd and Corrections Officer Kuhn

With regard to Captain Rudd[5] and Correctional Officer Kuhn, because it is not clear whether Carter was a pretrial detainee or an inmate subject to a judgment of conviction and sentence, we will analyze Carter's complaint both under the Due Process Clause of the 14th Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment.

#### (a) Due Process Clause

The constitutional standards regarding the conditions of a pretrial detainee's confinement were established in Bell v. Wolfish, 441 U.S. 520 (1979). In Wolfish, the Supreme Court ruled that a government can, in accordance with due process, incarcerate an individual charged with a criminal offense prior to an adjudication of guilt so long as the conditions of pretrial detention do not amount to punishment of the detainee. Id. at 535. Where punishment of a detainee is manifest, however, the

---

5. Even though Carter in his complaint does not aver that Captain Rudd was involved in his placement in administration segregation in light of the prison officials responses to Carter's grievance which indicate that Captain Rudd prepared "disciplinary paperwork" and generated a disciplinary report the court concludes that Captain Rudd had some involvement in moving Carter to administrative segregation.

detainee has been deprived of liberty without due process of law. Id.

Accordingly, a district court evaluating the constitutionality of the conditions of a person's pretrial confinement "must decide whether [a] disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. "[I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective." Id. at 539, n.20. As explained by the United States Court of Appeals for the Third Circuit,

> "n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense ...." For example, conditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster .... Under Bell, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."... "In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."

Bistrian v. Levi, 696 F.3d 352, 373 (3d Cir. 2012) (citations omitted).

Carter's allegations merely reveal that he was having difficulty with other inmates because they were apparently refusing to permit him to use the toilets on the prison block to which he was initially assigned. There are no allegations in the complaint from which it could be concluded that Captain Rudd or Correctional Officer Kuhn intended to punish Carter by placing him in the administrative segregation unit.  Captain Rudd allegedly prepared a disciplinary report and Corrections Officer Kuhn's intent in placing Carter in administrative segregation was for purposes of institutional security, i.e., removing Carter from a block where he was apparently causing a disturbance and having difficulty using the toilets.  To the extent that Captain Rudd placed Carter in segregation it was only for a brief 10-day period pending a hearing for purposes of institutional security, although that hearing did not take place and Carter was released from administrative segregation. The allegations in the complaint only reveal that Corrections Officer Kuhn moved Carter to administrative segregation to avoid the conflict with other inmates.  It is clear from Carter's own allegations that there was a legitimate non-penal purpose for placing him in administrative segregation, i.e., to avoid the conflict Carter was having with other inmates and to provide him with easy access to a toilet.

**(b) Eighth Amendment**

The fundamental principles of Eighth Amendment[6] analysis reveal that "only 'the unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by [that Amendment]." Ingraham v. Wright, 430 U.S. 651, 670 (1977) (citations omitted). Accord Whitley v. Albers, 475 U.S. 312, 319 (1986). This Amendment must be interpreted in accordance with "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 101 (1958). But a judge, when confronted with an Eighth Amendment claim, may not impose upon a prison his or her "notions of enlightened policy." Hassine v. Jeffes, 846 F.2d 169, 175 (3d Cir. 1988).

The right at stake here -- to be free from cruel and unusual punishment while incarcerated -- has both objective and subjective components. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component, i.e., whether the wrongdoing is harmful enough to establish a constitutional violation, is both "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992)(quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). In the context of the prison environment, "extreme deprivations are required to make

---

6. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

out a conditions-of-confinement claim." Id. at 9. Part of the penalty facing those who violate the norms of society is routine discomfort. Id.; Rhodes v. Chapman, 452 U.S. 337, 346 (1981). The Eighth Amendment does not require that inmates be provided with comfortable prisons. Rhodes, 452 U.S. at 349; Loe v. Wilkinson, 604 F. Supp. 130, 133-34 (M.D. Pa. 1984). To determine whether conditions of confinement are in violation of the Eighth Amendment, a court must look at the totality of the circumstances. Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990). The United States Supreme Court in Wilson held that

> [s]ome conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

501 U.S. at 304-305 (citations omitted).

The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind". Wilson, 501 U.S. at 298. The legal malice required to satisfy the subjective component of an Eighth Amendment claim is not present unless the defendant's conduct involved unnecessary

16

and wanton infliction of pain.  Id.; Ingraham, 430 U.S. at 670; Gregg v. Georgia, 428 U.S. 153, 173 (1976).  Wantonness "does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'"  Wilson, 501 U.S. at 302 (quoting Whitley, 475 U.S. at 320).  In the final analysis the Court concluded that an inmate must demonstrate that a prison official was deliberately indifferent to the conditions of his or her confinement.  Id. at 303.  Subsequently, in Farmer v. Brennan, ___ U.S ___, 114 S.Ct. 1970 (1994), the Court described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under
> the Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official knows
> of and disregards an excessive risk to inmate health
> or safety; the official must be aware of facts from
> which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw
> the inference.

Id. at 1979.  The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 1981.

There are no allegations in the complaint from which it can be concluded that Carter when housed in the administrative segregation unit or in general populations was subjected to the extreme deprivations which would impose liability on Captain Rudd or Officer Kuhn. Carter may have been deprived of a toilet for a

period of time but the allegations in the complaint reveal that Correctional Officer Kuhn took actions to alleviate that difficulty by moving Carter to an administrative segregation cell. Furthermore, there are no allegations in the complaint from which it can be concluded that Captain Rudd or Corrections Officer Kuhn had the requisite culpable state of mind. Consequently, the complaint against Captain Rudd and Corrections Officer Kuhn will be dismissed.

An order consistent with this memorandum follows.